UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                       )
JAMES RIVA,                            )
                                       )
          Plaintiff,                   )
                                       )        Civil Action No.
     v.                                )        14-13048-FDS
                                       )
PAUL BRASSEUR, MARK FOGAREN,           )
MICHAEL CARTON, LISA MITCHELL,         )
FERNANDO JACOME, JAMES BARRETT,        )
KRISTIE LADOUCEUR, and                 )
LUIS SPENCER,                          )
                                       )
          Defendants.                  )
_____)
```

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

SAYLOR, J.

This action is brought by a state prisoner against various correctional officials for an alleged mail-tampering conspiracy. Specifically, plaintiff James Riva's complaint alleges that correctional officers at Old Colony Correctional Center ("OCCC") have violated his constitutional rights and state laws by tampering with his mail, subjecting him to excessive "mouth checks" to ensure medication ingestion, and filing a false disciplinary report against him. The defendants include: (1) former DOC commissioner Luis Spencer; (2) former DOC director of administrative resolution Kristie Ladouceur; (3) OCCC superintendent Lisa Mitchell; (4) OCCC institutional grievance officer Mark Fogaren; (5) OCCC mail officer Paul Brasseur; (6) OCC sergeant Michael Carton; (7) OCCC correctional officer James Barrett; and (8) OCCC correctional officer Fernando Jacome.

Riva filed a *pro se* complaint alleging that defendants are liable pursuant to 42 U.S.C.

§ 1983 for violating his rights under various constitutional provisions including the Sixth,

Eighth, and Fourteenth Amendments.  The complaint also alleges that defendants are liable

under state law for violations of the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 284

§ 2, and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11(H)-(I).

Defendants have moved to dismiss the complaint for failure to state a claim under Fed. R.

Civ. P. 12(b)(6).  For the reasons set forth below, the motion will be granted.

## I.   Background

### A.   Factual Background

The factual allegations are drawn from the narrative complaint.

In April 1980, plaintiff James Riva was convicted of second-degree murder for shooting

his grandmother under the belief that she was a vampire.  (Compl. ¶ 4).  After his conviction,

Riva was committed to Bridgewater State Hospital in 1980 to treat his schizophrenia.  (*Id.* at

¶¶ 4-5).  While at Bridgewater, Riva alleges that the medical director issued an order to prevent

him from receiving "fan mail" and non-familial visitors.  (*Id.* at ¶ 6).  In 1987, Riva was

discharged to a medium-security prison.  (*Id.* at ¶ 8).  Riva alleges that he continued to receive

almost no mail at that facility.  (*Id.*).

At the medium-security prison, Riva stopped taking his anti-psychotic medication,

allegedly because of criticism from other inmates and statements from his previous doctors that

"it might be possible for [him] to go medication free at some point in the future."  (*Id.* at ¶ 9).

Riva was unable to sleep for many days after he stopped taking his medication.  (*Id.* at ¶ 10).  In

that sleep-deprived state, Riva allegedly hallucinated a telepathic communication from a nurse

who instructed him to stab a correctional officer.  (*Id.*).  After he stabbed the officer, nearly

killing him, Riva was again committed to Bridgewater State Hospital and then transferred to a

maximum-security prison for the next sixteen years.  (*Id.* at ¶¶ 10-11).  He continued to receive "almost no mail" at both facilities.  (*Id.*).

In 2006, Riva was transferred to Old Colony Correctional Center.  (*Id.* at ¶ 12).  At that time, Riva's relatives allegedly "reported that a lot of internet traffic [was] about him," and he began to receive "some sporadic letters from lonely young women who were fascinated by Riva's purported title as VAMPIRE KILLER."  (*Id.*).  Riva alleges that he received letters and photos from women he did not know, but that the photos "would sometimes be stolen by the mail officer" and, upon his filing of a written grievance, "the mail officer would completely cut off correspondence."  (*Id.* at ¶ 13).

Riva further alleges that defendant Paul Brasseur, the mail officer, impersonated him in corresponding with Riva's "pen friends," created a fake identification to cash money orders sent to Riva, and stole Riva's letters and probate court documents.  (*Id.* at ¶¶ 14-18).  Riva also alleges that the non-correctional officer defendants conspired to cover up Brasseur's actions.  (*Id.* at ¶ 19).  Along with Brasseur's alleged mail tampering, Riva alleges that correctional officer James Barrett harassed him by subjecting him to excessive "mouthchecks" despite Riva "never once [having] a hidden pill . . . discovered under Riva's tongue or in his cheek."  (*Id.* at ¶ 23).  Lastly, Riva alleges that correctional officer Fernando Jacome fabricated a report about bottles of chemicals in Riva's cell in order to remove him from "his prized single cell."  (*Id.* at ¶ 24).  Riva generally alleges that the various acts of the correctional officers are part of a larger DOC conspiracy to prevent him from obtaining parole.

Riva's complaint is accompanied by 159 exhibits, which are mostly grievance-appeal decisions and letters that Riva sent to various officials detailing the allegations in the complaint.

B.      **Procedural Background**

Riva filed a *pro se* complaint on July 18, 2014, along with motions to appoint counsel and to proceed *in forma pauperis*.  The Court granted the motion to proceed *in forma pauperis*, but denied the motion to appoint counsel.  On January 26, 2015, Riva filed a motion for reconsideration of his motion to appoint counsel and included exhibits that had been missing from the original complaint.  On February 19, 2015, Riva filed an identical motion for reconsideration.  The motion for reconsideration was denied on February 23, 2015.  After receiving proper service of the complaint, on July 2, 2015, defendants moved to dismiss the complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

On September 8, 2015, Riva filed an essentially identical complaint in a case that was assigned to Judge Talwani.  On October 15, 2015, Riva filed another motion to appoint counsel, motions for subpoenas and discovery, interrogatories to be served upon defendants, and an opposition to defendants' motion to dismiss.  On November 3, 2015, defendants filed a motion seeking a protective order to stay discovery pending a decision on the motion to dismiss.

II.     **Legal Standard**

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give . . . [the non-moving party] the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a [pleading] is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, the pleading must state a claim that is plausible on its

4

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## III.  Analysis

### A.  Section 1983 Claims

Section 1983 is not itself a source of substantive rights, but rather provides a means for vindicating rights conferred by the Constitution or laws of the United States.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Without explaining a theory for relief, Riva's complaint identifies the Sixth, Eighth, and Fourteenth Amendment as the sources of the substantive rights allegedly infringed by the eight defendants.  Defendants contend that dismissal is proper for two primary reasons.  First, defendants contend that Riva's complaint is comprised entirely of conclusory statements and is void "of any factual allegations which state a facially plausible legal claim."  (Defs.' Mem. 4-8).  Second, defendants contend that even if Riva's allegations did

meet the plausibility-pleading requirement, his complaint fails to state a claim upon which relief can be granted under the Sixth, Eighth, and Fourteenth Amendments.  (Defs.' Mem. 13-18).

### 1.     Statute of Limitations

Defendants contend that Riva's claims arising from alleged violations of his rights before July 2011 are barred by the statute of limitations applicable to cases filed under § 1983.  Because § 1983 contains no limitations period, federal courts borrow the relevant state-law statute of limitations for personal-injury torts.  *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (directing federal courts to look to state law for the relevant statute of limitations for § 1983 claims); *McIntosh v. Antonino*, 71 F.3d 29, 34 (1st Cir. 1995).  In Massachusetts, that period is three years.  Mass. Gen. Laws ch. 260 § 2A.  Federal law, however, determines when the accrual period begins.  *McIntosh*, 71 F.3d at 34.  "Under federal law, accrual starts when the plaintiff 'knows, or has reason to know, of the injury on which the action is based.'"  *Id.* (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992)).

The complaint alleges that defendants, specifically OCCC mail officer Brasseur, began violating Riva's rights in 2006.  (*See* Compl. ¶¶ 31, 43-44).  Surely, Riva knew of his alleged injury because he filed inmate grievance forms.  (*See id.* at Ex. 131).  Riva filed his complaint on July 18, 2014.  Accordingly, to the extent that Riva's claims raise allegations of defendants' actions that took place before July 18, 2011, those claims are barred by the statute of limitations.

### 2.     Claim Against Brasseur

The heart of the complaint is that Brasseur has conspired to steal and tamper with Riva's mail.  The complaint does not assert a specific theory of relief, except to allege that Brasseur has violated Riva's rights under the Sixth, Eighth, and Fourteenth Amendments.  Therefore, the

Court will address whether Riva's allegations, if assumed to be true, can state a claim upon which relief can be granted under each theory in turn.

The complaint alleges, but only in passing, a violation of Riva's rights under the Sixth Amendment.  The Sixth Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. amend. VI.  The complaint does not include any allegations that would support such a claim.  Accordingly, any claim against the defendants that is based on an alleged violation of Riva's Sixth Amendment rights will be dismissed.

Construed liberally, Riva's allegations against Brasseur under an Eighth Amendment theory are that Brasseur stole his mail, OCCC supervisors did not believe Riva's allegations, and that "his treatment providers gave him a mega dose of dangerous anti-psychotic medicine for a whole year because of their (wrongly) perceived notion that Riva was imagining the mail theft." (Compl. ¶ 49).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  That prohibition clearly encompasses "inherently barbaric" punishments, *Graham v. Florida*, 560 U.S. 48, 59 (2010), and conditions of confinement that impose "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-03.  However, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Thus, "[t]o succeed on an Eighth Amendment claim based on inadequate or delayed medical care, a plaintiff

must satisfy both a subjective and objective inquiry:  he must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety,' and second, that the deprivation alleged was 'objectively, sufficiently serious.'" *Leavitt v. Correctional Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Burrell v. Hampshire Cty.*, 307 F.3d 1, 8 (1st Cir. 2002)).  "The standard encompasses a 'narrow band of conduct':  subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim; rather, the treatment provided must have been so inadequate as to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Leavitt*, 645 F.3d at 497 (quoting *Feeney v. Correctional Med. Servs.*, 464 F.3d 158, 162 (1st Cir. 2006) and *Estelle*, 429 U.S. at 105-06).  Put another way, a defendant's conduct must be "so grossly inadequate as to constitute a knowing denial of proper medical care." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991).

"When evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014).  "In consequence, even a denial of care may not amount to an Eighth Amendment violation if that decision is based on legitimate concerns regarding prisoner safety and institutional security." *Id.*

Here, the complaint does not state a plausible claim that Brasseur's alleged actions of tampering with his mail subjected Riva to inherently barbaric punishment or grossly inadequate medical care.  Riva's allegations fail to show that he has been subjected to medical care that falls below objectively minimal adequate treatment as a result of the alleged mail tampering.  Furthermore, it does not appear that Brasseur's alleged actions have any connection to Riva's medication.  Riva himself acknowledges that he is schizophrenic, and thus has been treated with

anti-psychotic medicine.  In fact, according to Riva's complaint, his own decision to stop taking his medication caused him to hallucinate and stab a correctional officer.  Nor has Riva demonstrated that Brasseur acted with deliberate indifference to a serious medical need. Therefore, Riva's claim against Brasseur fails to state a claim upon which relief can be granted under the Eighth Amendment.

Construed liberally, Riva's allegations against Brasseur under a Fourteenth Amendment theory are that Brasseur stole his mail and destroyed "hundreds of dollars" worth of property. (Compl. ¶ 49).

The Due Process Clause protects prisoners from being deprived of property without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, Riva's claim that he was deprived of his property without due process is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  *Id.* at 537.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Id.*  That rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state practice or procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *see also Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 535 (1st Cir. 1995) ("*Parratt* and *Hudson* preclude § 1983 claims for the random and unauthorized conduct of state officials because the state cannot anticipate and control [such conduct] in advance." (internal quotation marks omitted)).  Riva has not alleged that the rights provided to him under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, or otherwise under state law, are inadequate forms of

relief for Brasseur's alleged conduct.  *See Riordan v. Martin*, 51 F.3d 264, 1995 WL 146215, at

*1 (1st Cir. 1995) (unpublished decision) ("Since inadequacy of the state's remedy is a material

element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual

allegations, either direct or inferential, to sustain an actionable legal theory.").  Therefore, even if

the Court were to assume Riva's conclusory allegations against Brasseur were true, his complaint

fails to state a claim for which relief can be granted under the Sixth, Eighth, and Fourteenth

Amendments.

Furthermore, and in any event, the complaint's sparse and conclusory allegations against

Brasseur are insufficient to survive a motion to dismiss under *Twombly* and *Iqbal*.  Two

examples demonstrate the complaint's conclusory nature.  First, the complaint alleges, without

any supporting facts, that Brasseur "has apparently obtained a fake ID in Riva's name and has

cashed at least on[e] $20 money order made out to Riva." (Compl. ¶¶ 16, 29).  Second, the

complaint alleges that "Riva theorizes that Brasseur is desperate to get a female companion.

Brasseur weighs about 420 pounds.  He has a disheveled appearance and his social skills are

poor.  Riva believes that [Brasseur] is constantly using Riva's mail as one outlet to try to obtain a

female companion." (Compl. ¶ 18).  Therefore, without more than conclusory allegations

against Brasseur, the complaint fails to "raise a right to relief above the speculative level."  *See*

*Twombly*, 550 U.S. at 570.  Accordingly, Riva's § 1983 claim against Brasseur will be

dismissed.

### 3.    Claims Against Spencer, Ladouceur, Mitchell, Fogaren, and Carton

The complaint also asserts claims against former DOC commissioner Spencer, former

DOC director of administrative resolution Ladouceur, OCCC superintendent Mitchell, OCCC

institutional grievance officer Fogaren, and OCCC sergeant Carton.  Given the complaint's

narrative nature and the fact that it only briefly mentions some of the defendants, it is somewhat difficult for the Court to ascertain what the complaint alleges as to those individuals.  The Court will proceed under the assumption that Riva alleges the same Sixth, Eighth, and Fourteenth Amendment violations against Spencer, Ladouceur, Mitchell, Fogaren, and Carton as he alleged against Brasseur.

The complaint mentions Spencer, by his former position, in only one paragraph.  The entirety of that paragraph reads "Riva has written the commissioner of correction numerous times about this problem with the mail and has never ever been afforded an investigation—only a cover-up."  (Compl. ¶ 20).  The complaint's allegations against Mitchell are limited to the claim that she failed to grant plaintiff's appeals of the institutional grievance coordinator's decisions denying Riva's mail-tampering grievances.  (Compl. ¶¶ 36, 39, 43).  The complaint further alleges that "whenever Riva appealed a grievance to the superintendent, Lisa Mitchell would deny the appeal, and make it a point the following day to appear in the hallway and give Riva a giant leering smile."  (Compl. ¶ 15).  The complaint's allegations against Ladouceur are limited to the claim that she did not overturn the decisions of Mitchell in denying Riva's grievance appeals.  (Compl. ¶¶ 36, 41, 47).  The complaint alleges that institutional grievance officer Fogaren covered-up for Brasseur's alleged mail tampering by denying Riva's grievances. (Compl. ¶¶ 16, 18-19, 36).  Finally, the complaint alleges that Carton, along with other defendants, prevented Riva from obtaining his father's will.  (Compl. ¶¶ 39-40).

To the extent that the complaint asserts claims against Spencer, Ladouceur, Mitchell, Fogaren, and Carton in their supervisory capacities of Brasseur, such claims are not cognizable under § 1983 because there is no *respondeat superior* liability.  *See, e.g.*, *Capozzi v. Department of Transp.*, 135 F. Supp. 2d 87, 98 (D. Mass. 2001) (citing *Ruiz Rivera v. Riley*, 209 F.3d 24 (1st

Cir. 2000)).  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  *Velez-Rivera v. Agosto-Alicea,* 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo,* 414 F.3d 124, 129 (1st Cir. 2005)).  "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'"  *Id.* (quoting *Carmona v. Toledo,* 215 F.3d 124, 132 (1st Cir. 2000)); *see also Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

To the extent that the complaint asserts claims against Spencer, Ladouceur, Mitchell, Fogaren, and Carton for their failure to grant the relief Riva requested in his inmate grievances, such claims are also not cognizable under § 1983.  It is well-established that a "[m]ere denial of grievances does not violate any constitutional right in the absence of an underlying constitutional violation."  *Moffat v. Department of Corr.*, 2015 WL 4270161, at *5 (D. Mass. July 13, 2015).

Finally, to the extent that the complaint claims that Spencer, Ladouceur, Mitchell, Fogaren, and Carton actively participated in the alleged mail-tampering conspiracy, such claims fail to state a claim for relief under the Sixth, Eighth, and Fourteenth Amendments for the same reasons they failed against Brasseur.

Accordingly, Riva's § 1983 claims against Spencer, Ladouceur, Mitchell, Fogaren, and Carton are dismissed.

### 4.  <u>Claim Against Barrett</u>

The complaint asserts claims against OCCC correctional officer Barrett for his alleged

excessive "mouth checks" of Riva to ensure that he took his anti-psychotic medicine.  (Compl.

¶ 23).  Riva's theory of relief in his claim against Barrett is unclear.  To the extent that Riva

seeks relief under the Eighth Amendment for cruel and unusual punishment or inadequate

medical care, or under the Fourteenth Amendment for deprivation of a liberty interest, the

allegations against Barrett fail to state a claim upon which relief can be granted.  A prisoner's

liberty interest is infringed only if the punishment inflicted upon the inmate imposes an "atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See*

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (thirty days in segregation did not trigger a liberty

interest).  Here, Riva has not shown that Barrett denied him due process or that his denial

resulted in a loss of liberty, especially when the Court considers that Riva's failure to take his

anti-psychotic medication caused him to stab a correctional officer.  Accordingly, Riva's § 1983

claim against Barrett will be dismissed.

### 5.        Claim Against Jacome

The complaint asserts a claim under § 1983 against OCCC correctional officer Jacome

for allegedly issuing a false disciplinary report "in hopes of removing [Riva] from his prized

single cell."  (Compl. ¶ 24).  Although the complaint states no constitutional grounds for such a

claim under § 1983, the Court will assume that the complaint asserts a claim under the

Fourteenth Amendment.

If prisoners are afforded requisite process at a disciplinary hearing, they cannot sustain

§ 1983 claims for allegations of false, improper, or erroneous disciplinary charges filed by prison

officials.  *See, e.g.*, *Orwat v. Maloney*, 360 F. Supp. 2d 146, 157, 162 (D. Mass. 2005) ("[P]rison

inmates have no constitutionally guaranteed immunity from being falsely or wrongly accused of

conduct which may result in the deprivation of a protected liberty interest. . . . The constitutional

corrective for such things is the subsequent hearing that the inmate receives on those charges."
(citations omitted)).  "The Court's review of a prisoner's challenge to the due process
deficiencies in a disciplinary hearing is thus 'limited to whether [due process] minimum
protections [are] met, and whether the written record provided by the fact finder presents some
evidence to support the findings made in the disciplinary hearing.'"  *Cuevas v. DiPaulo*, 2011
WL 2118268, at *5 (D. Mass. May 23, 2011) (quoting *Orwat*, 360 F. Supp. 2d at 163)).  Here,
the complaint is silent as to any due-process deficiencies in the disciplinary hearing resulting
from Jacome's allegedly false incident report.  In fact, Riva concedes that the disciplinary report
was dismissed after further investigation.  (Compl. ¶ 24).  Therefore, it is unclear that Riva
suffered any harm at all as a result of Jacome's allegedly false incident report.  Accordingly,
Riva's § 1983 claim against Jacome will be dismissed.

> **B.      State-Law Claims**

The complaint also alleges that all defendants are liable under state law for violations of
the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 284 § 2, and the Massachusetts Civil
Rights Act, Mass. Gen. Laws ch. 12 §§ 11(H)-(I).

Riva's claims against defendants for alleged violations of the Massachusetts Tort Claims
Act will be dismissed for several reasons.  First, as previously noted, the complaint relies almost
entirely on conclusory allegations about the alleged mail-tampering conspiracy.  Second, the
defendants, as public employees, are immune from tort liability pursuant to Mass. Gen. Laws ch.
258 § 2, which states that "no such public employee or the estate of such public employee shall
be liable for any injury or loss of property or personal injury or death caused by his negligent or
wrongful act or omission while acting within the scope of his office or employment."  Third,
Riva has failed to name the public employer, the Commonwealth of Massachusetts, as a

defendant in this action.  Fourth, to the extent that the complaint alleges that Brasseur's allegedly tortious conduct was intentional, the MTCA does not provide relief for such a claim.  *See* Mass. Gen. Laws ch. 258 § 10(c) ("The provisions of sections one to eight, inclusive, shall not apply to: . . . any claim arising out of an intentional tort . . . .").  Fifth, the complaint does not state a claim under the MTCA against the other defendants to the extent that the claims rely on the fact that they supervised Brasseur.  *See* Mass. Gen. Laws ch. 258 § 10(b) ("The provisions of sections one to eight, inclusive, shall not apply to: . . . any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee . . . whether or not the discretion involved is abused.").  Thus, the complaint fails to state a claim for which relief can be granted under the Massachusetts Tort Claims Act.

The complaint also fails to state a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11(H)-(I).  Riva contends that his complaint states a claim under the MCRA because Carton and Mitchell notified him that he would be "locked up" if he continued to send mail to his father's widow, who requested that OCCC prevent Riva from contacting her. (Compl. ¶¶ 39, 49).  In order to state a claim under the MCRA, Riva must allege that the defendants interfered with his civil rights through "threats, intimidation, or coercion."  *Deas v. Dempsey*, 403 Mass. 468, 470 (1988).  By notifying Riva, a prisoner, that he would face discipline if he continued to violate prison rules, the defendants did not interfere with his civil rights, and surely did not do so through threats or intimidation.

Accordingly, Riva's state-law claims under the MTCA and MCRA will be dismissed.

## IV.    Conclusion

In summary, the complaint fails to state a claim upon which relief can be granted under

42 U.S.C. § 1983, the Massachusetts Tort Claims Act, and the Massachusetts Civil Rights Act.

Accordingly, and for the foregoing reasons:

1.      Defendants' motion to dismiss is GRANTED;

2.      Plaintiff's motion to appoint counsel is DENIED as moot;

3.      Plaintiff's motion for subpoenas is DENIED as moot;

4.      Plaintiff's motion for discovery is DENIED as moot; and

5.      Defendants' motion for a protective order is DENIED as moot.

**So Ordered.**


                                             /s/ F. Dennis Saylor IV
                                             F. Dennis Saylor IV
Dated:  November 18, 2015                    United States District Judge